Gaston, J.
The case, stated by his Honor to have been made out by the testimony, certainly exhibits a course of proceeding on the part of the defendants, exceedingly unfair and greatly to their discredit. But whether this conduct, on an indictment properly framed, would or would not subject them to the penalties of a conspiracy, we need not enquire, for we are clearly of opinion, that it did not support any of the charges contained in this indictment. It is of the first importance in the administration of criminal justice, that the proofs should correspond with the allegations, and for that reason, among others, the allegations are required to be distinct and explicit. It is not easy to understand those set forth in this indictment, but, by no reasonable intendment, can we so construe them as to accommodate the case made to the charges preferred. The case made is of a scheme *386 contrived between the defendants and others, whereby to Pr0Cll!’e the first entries of vacant land in the entry-taker’s office, so as te secure to themselves a priority over- entries that might be afterwards made in that office by others. And it is expressly stated that it was no part of this scheme, to obfaiu money from any person, or' to' defraud any person of his land. Now what is the conspiracy charged? In the first count, ibis to cheat and defraud all the good citizens of the State of divers large sums of money and of their entries of vacant-and nnsurveyed land lying in the county of Macon, aud to secure and appropriate the same to their own use. What is an entry? It is lawful for a citizen to make with the entry-taker a claim for vacant land, setting forth in writing the situation of the land claimed, and the entry-taker is then to enter in his book a copy of this claim, and thereupon it becomes an entry. A copy of this entry, with a warrant to survey the laud wherein described, is afterwards to be delivered to the enterer, who, in due time, can perfect the entry with a grant. A combination or conspiracy to cheat a man of his entries of vacant and unsur-veyed lands, and to appropriate the same to the use of the conspirntors, necessarily means to deprive him, who has made such entries, but has not yet had them surveyed and granted, of the rightful benefits thereof, and to take these entries or the benefits thereof to the conspirators. It is said that the gist of a conspiracy is the unlawful concurrence of many in a wicked scheme, and that the crime of conspiracy is complete without any act having been done to carry it into execution. This consideration renders it but the more important that the charge of conspiracy should clearly set forth the purpose and object of the combination, as in these are to be found almost the only marks of certainty, by which the parties accused may know what is the accusation which they are to defend. The third count slates the purpose of the conspiracy as the first — and the fourth count states its purpose to cheat an individual, Benjamin S. Brittain, of his money and entries-. There is, therefore, the -same variance between the proofs and-these charges as there is between the proofs and the charge in the first count. The second count charges the *387 purpose of the conspiracy to cheat the good citizens of-the State of large sums of money, of which purpose the case expressly states there was no evidence.
We hold, therefore, that his Honor erred in instructing the jury, that if they believed from the evidence that, the defendants entered into a combination to make entries in the office before it was opened, or before it was declared to be opened, or after it was opened, for the purpose of appropriating the lands to their own use-and excluding others, they were guilty of the conspiracy charged in the indictment.
This opinion must be certified to the Superior Court of -Burke, with instructions to set aside the verdict against the appellants — and, if the State chooses to proceed further in the case, to order a venire de novo.
.Per Curiam, Judgment reversed, and new trial awarded.